UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HOWARD PAYNE,

        Petitioner,

v.                                                    No. 15-cv-12965-PBS

KELLY RYAN,

        Respondent.

**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (Dkt. No. 1)**

Cabell, U.S.M.J.

## I.   INTRODUCTION

Howard Payne ("the petitioner" or "Payne") is currently incarcerated at the Massachusetts Correctional Institute at Shirley following his conviction in the Suffolk County Superior Court for second degree murder among other offenses. Payne admits that he fatally shot the husband of a woman with whom he was romantically involved, but argues that the shooting was provoked and occurred in the midst of "sudden combat," and thus amounted at most to manslaughter rather than murder. In fact, the jury was instructed that it could find Payne guilty of manslaughter if it agreed the shooting occurred in the midst of sudden combat, and could also for that matter acquit Payne if it concluded he acted

in self-defense.  The jury necessarily rejected these theories in deciding that Payne acted with malice and committed second degree murder.

Against this backdrop, Payne asserts that he is actually innocent of second degree murder but he does not argue sufficiency of the evidence.  Rather, he argues that because there was evidence which if credited would have supported a finding that he at most committed manslaughter, he was entitled under established state court precedent to have the murder charge removed from the jury's consideration, and to have the charge reduced to manslaughter. Payne did not seek this relief at trial but he did move post-conviction for a reduced verdict to manslaughter.  Having failed to obtain the desired relief in the state courts, Payne now seeks a writ of habeas vacating his murder conviction and reducing it to one for manslaughter.  As discussed below, I find that his claim is not cognizable on habeas review because it alleges only an error of state law.  Even if cognizable, I find the claim to be without merit.  I recommend therefore that the petition for habeas relief be denied.

## II.  RELEVANT FACTS

### A. The Underlying Crime

As neither the Supreme Judicial Court ("SJC") nor the Massachusetts Appeals Court made detailed findings of fact, the

facts as the jury might have found them are taken from the trial transcript. *See Jean-Baptiste v. Thompson*, No. 14-cv-11698, 2017 WL 1014995, at *1 (D. Mass. March 15, 2017).

Payne owned and operated Jubilee Auto Services, a gas station and car dealership located on River Street between Mattapan and Hyde Park (in Boston). (Trial Transcript, Dkt. No. 22, Exs. A-O, [hereinafter Tr. _: _}, Vol. VIII, page 22). Payne owned two unlicensed firearms, including a .45 caliber revolver and a .38 caliber revolver. (Tr. IX: 122-123).

In the spring of 2005, Melissa Vaughn ("Vaughn") was referred to Payne's dealership when she began having car trouble. (Tr. VIII: 22; Tr. IX: 125). Payne sold Vaughn a minivan and later replaced it with another vehicle when the minivan broke down. (Tr. VIII: 27-31; Tr. IX: 126-29). Their relationship progressed over time and became sexual by the end of 2005. (Tr. VIII: 41, 43). At the same time, however, Vaughn was married to but separated from a man named Ismael DelValle ("DelValle"), and DelValle was eager to revive their relationship. (Tr. VIII: 13-14, 153, 183).

On the evening of February 10, 2006, Vaughn went with her children to her parents' home on Hollingsworth Street. (Tr. VIII: 70). DelValle showed unexpectedly. (Tr. VIII: 71). DelValle took two of Vaughn's children to a local drugstore and bought a box of chocolates and a large teddy bear. (Tr. VI: 101, 165; Tr.

3

VIII: 72).  He tried to give them to Vaughn when he returned but she refused to accept the bear because one of her children was allergic to the fur.  (Tr. VI: 115, 140-41, 168-69; Tr. VIII: 75-76).  DelValle and Vaughn began to argue and Payne happened to call her in the midst of it.  Payne heard what he assumed was Vaughn's mother yelling at Vaughn to get off the phone.  Vaughn said that she could not talk then and hung up.  (Tr. VI: 116-17, 141-42, 169, 258; Tr. VIII: 76-77, 191).  The phone rang again but DelValle took it from Vaughn and slammed it closed.  (Tr. VI: 120-21).  DelValle appeared as though he was going to throw the phone at Vaughn but Vaughn's mother intervened and persuaded DelValle to leave.  (Tr. VI: 237-39).

On that same evening, Payne was planning to attend a concert with his wife, with whom he had an on and off relationship.  (Tr. IX: 134, 159).  When he learned his wife was not yet ready, he decided on the spur of the moment to go see Vaughn to give her some money for a trip to a casino.  (Tr. IX: 162-63).  Upon arriving at Vaughn's parents' home, Payne went into a vacant lot to urinate.  (Tr. IX: 172).  Payne heard loud footsteps coming towards him and when they stopped he turned around and saw DelValle looking into Payne's car.  (Tr. IX: 181-82).  DelValle tried to open the driver's door and looked through the windshield.  (Tr. IX: 182-83).  According to Payne, when DelValle saw Payne, he let out a

"rebel yell" and ran at Payne.  (Tr. IX: 185).  DelValle's arm was raised and he had something shiny in the upraised hand.  (Tr. IX: 184-85).  Payne yelled "No, no, not tonight, not tonight" and then pulled his .38 revolver out from his pocket and shot twice at the shiny object.  (Tr. IX: 185, 188).  The shots hit DelValle but he continued to approach Payne, and hit Payne with his left hand.  (Tr. IX: 189).  Payne at some point became aware that he was lying on his back, on the ground, with DelValle straddling him.  (Tr. IX: 191-93).  Payne also apparently at some point had fired a third shot at DelValle.  (Tr. IX: 192).  Payne pushed DelValle off of him and returned to his car and drove away.  (Tr. IX: 193-94).  Payne subsequently hid the firearm in a leaf bag and returned to his home in Weymouth that evening.  (Tr. IX: 196, 199, 274).  DelValle died as a result of the shooting.  (Tr. VII: 32).

On the following day Payne drove to the Logan Airport area and then later that day to Lynchburg, Virginia.  (Tr. IX: 75, 201-03, 278).  While en route there, Payne was contacted by a Boston police officer and lied that he was still in the Boston area.  (Tr. VII: 72-73, 188).

B. **State Court Proceedings**

*The Trial*

On May 5, 2006, the grand jury returned an indictment charging the petitioner with first-degree murder, the illegal carrying of

a firearm, and unlawful possession of ammunition.  (S.A. 00027).
The trial began on June 13, 2007.  The defense acknowledged that
Payne fatally shot DelValle but presented evidence suggesting that
Payne was provoked and acted without premeditation.

Among other things, the jury heard that Payne was in poor
physical condition, that he was fifty nine years old, weighed over
270 pounds, and suffered from diabetes, which caused frequent
urination, eye blurriness, dry mouth and edema, and also made it
difficult for Payne to run.  (Tr. IX: 117).  The jury also heard
that DelValle was upset over Payne and Vaughn's relationship and
had previously committed acts of violence against each of them as
a result.  In one instance in December 2005, DelValle chased and
assaulted Vaughn over a bill that Payne had paid for Vaughn.  (Tr.
VIII: 33, 132, 163-65).  On another occasion in January 2006,
DelValle actually knocked Payne unconscious after Payne came to
Vaughn's residence to fix a windshield wiper on her car, and then
called Payne a few days later and told him that the next time he
would "kick [his] head in." (Tr. VIII: 56; Tr. IX: 147-153).  With
respect to the fatal shooting itself, Payne testified that when
DelValle approached him with something shiny in an upraised hand
Payne thought it was a knife.  Payne testified that he did not
retreat from DelValle because (1) he could not see where to go in

the back of the lot, (2) he could not outrun DelValle, and (3) Delvalle was positioned between Payne and his car. (Tr. IX: 194).

During the closing, the defense argued for a verdict of not guilty on all charges on the ground of self-defense. The prosecution in contrast asked the jury to find Payne guilty of first degree murder. For its part, the trial court instructed the jury (with respect to the shooting) that it could return a verdict for first degree murder, second degree murder, manslaughter, or not guilty on the ground of self-defense.

Regarding murder, the judge instructed the jury that first degree murder required proof that Payne unlawfully killed DelValle with deliberately premediated malice aforethought or with extreme atrocity or cruelty, whereas second degree murder required proof that Payne committed the unlawful killing with malice aforethought, with malice aforethought being proven by showing that he (1) intended to kill the victim, or (2) specifically intended to do grievous bodily harm to the victim, or (3) intended to do an act creating a plain and strong likelihood that death would follow. (TR. X: 144, 155-156).

With respect to manslaughter, the judge instructed the jury that it could return a verdict for manslaughter if the killing occurred under mitigating circumstances, including if it occurred in the "heat of passion induced by sudden combat." The court

7

explained that sudden combat "involves a mutual and sudden assault by both the deceased and the defendant." The court explained that physical contact could amount to reasonable provocation, and that the heat of passion induced by sudden combat must be sudden, that is, "the killing must have occurred before a reasonable person would have regained control of his or her emotions and the defendant must have acted in the heat of passion without cooling off at the time of the killing." The judge further instructed the jury that if the Commonwealth "proved beyond a reasonable doubt the elements of murder" but "has not proved beyond a reasonable doubt the absence of heat of passion induced by sudden combat," then the jury could not convict Payne of murder, and would be justified in finding him guilty of voluntary manslaughter. (Tr. X: 158-160).

Finally, the judge instructed the jury that it could acquit Payne if it found that he acted in self-defense but did not use excessive force in so doing. (Id. at 160-163).

Following its deliberations, the jury returned a verdict of second degree murder with respect to the shooting, and guilty on the charges of illegally carrying a firearm and illegal possession of ammunition. (Tr. XII: 11, 17). The court sentenced Payne to life imprisonment on the murder conviction and imposed concurrent terms of imprisonment of four to five years for the illegal firearm

carrying conviction, and six months for the illegal ammunition possession conviction. (Tr. XII: 17-19)

Payne subsequently mounted three separate challenges to his murder conviction; all were unsuccessful.

### Payne I- The Direct Appeal

On July 13, 2007, Payne appealed his conviction on several grounds unrelated to the present habeas petition. (S.A. 00013). On October 27, 2011, the Massachusetts Appeals Court rejected the arguments and affirmed the petitioner's conviction. *Commonwealth v. Payne*, 80 Mass. App. Ct. 1112 (2011). The petitioner sought further appellate review but the Massachusetts Supreme Judicial Court (SJC) denied the request without comment. *Commonwealth v. Payne*, 461 Mass. 1104, 959 N.E.2d 434 (Table) (December 21, 2011).

### Payne II - The Motion For a Reduced Verdict

On May 20, 2012, Payne moved in the trial court for a reduced verdict pursuant to Mass. R. Crim. P. 25(b)(2). Rule 25(b)(2) among other things allows a judge to "order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment." Payne specifically asked the court to enter a required finding of not guilty on the murder charge and to replace it with a conviction for manslaughter. (S.A. 00093). On June 6, 2013, the trial court denied the motion. (S.A. 00123).

Payne appealed the trial court's denial. On June 2, 2014, the Appeals Court affirmed judgment after finding that the trial court did not abuse its discretion in denying the motion. (S.A. 00199). The Court found that "[v]iewed in its best light, the defendant's motion was based on two grounds: (1) that the jury instructions regarding the lesser-included charge of voluntary manslaughter were deficient, and 2) that the overwhelming weight of the evidence supported at most a manslaughter conviction." *Commonwealth v. Payne*, 85 Mass. App. Ct. 1123 (June 2, 2014). The Appeals Court found that neither argument had merit because the defendant could not show any error in the jury instructions that were given, and the evidence plainly was sufficient to support a conviction for murder in the second degree. *Id.*

On June 19, 2014, the petitioner sought further appellate review but the SJC denied the request without comment. *Commonwealth v. Payne,* 469 Mass. 1105 (Table) (August 01, 2014).

### *Payne III - The Motion for a New Trial*

On August 14, 2014, the petitioner moved in the trial court for a new trial pursuant to Mass. R. Crim. P. 30(b). Rule 30(b) among other things authorizes a trial judge to "grant a new trial at any time if it appears that justice may not have been done." (S.A. 00212-217). The petitioner argued that because the trial court had instructed the jury on "sudden combat," and because the

SJC "has rendered decisions repeatedly that sudden combat reduces murder to manslaughter," and because the jury had rejected the argument of self-defense, which the petitioner accepted, due process required that the court reduce the murder conviction to manslaughter. (Id.).

On August 26, 2014, the trial court denied the motion for a new trial. (S.A. 00221). The petitioner appealed. On April 23, 2015, the Appeals Court found that the appeal was barred by the doctrine of direct estoppel because the issue of whether the petitioner's murder conviction should be reduced to manslaughter was raised and litigated in *Payne* II, i.e., Payne's appeal from the denial of his Rule 25(b)(2) motion. *Commonwealth v. Payne*, 87 Mass. App. Ct. 1116 (April 23, 2015). Payne sought further appellate review but the SJC denied the request without comment, on June 26, 2015. (S.A. 00243).

## C. **The Habeas Petition**

Payne argues that the trial court erred when it rejected his core claim that he was entitled to have his conviction reduced to one for manslaughter where the jury was presented with credible evidence of sudden combat, and consequently denied his Rule 25(b)(2) motion for a reduced verdict (*Payne* II) and his Rule 30(b) motion for a new trial (*Payne* III). Payne argues in his habeas petition that "sudden combat reduces murder to manslaughter or in

essence amounts to a directed verdict of not guilty on murder and allows the jury to only consider manslaughter." Payne argues that the SJC has consistently affirmed this principle through a string of seven decisions ranging from 1976 to 2011.[1] Payne cited these same seven cases in advancing similar arguments in *Payne* II and *Payne* III. Payne argues that the trial court's failure to accordingly reduce his conviction from murder to manslaughter constitutes a violation of his rights to due process and equal protection, in violation of the Fifth and Fourteenth Amendments.

## III. STANDARD OF REVIEW

"Federal habeas is not an ordinary error-correcting writ." *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989). It does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, a federal court may grant a writ of habeas corpus only if the underlying state court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[1] The cases are: *Commonwealth v. Glover*, 459 Mass. 836 (2011); *Commonwealth v. Dyer*, 460 Mass. 728 (2011); *Commonwealth v. Acevedo*, 446 Mass. 435 (2006); *Commonwealth v. Andrade*, 422 Mass. 236 (1996); *Commonwealth v. Carrion*, 407 Mass. 283 (1990); *Commonwealth v. Walden*, 380 Mass. 724 (1980); and *Commonwealth v. Rodriguez*, 370 Mass. 684 (1976).

proceeding.   28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

A state court decision is "contrary" to clearly established federal law only where "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A decision is an "unreasonable application" of federal law where "the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* The magnitude of the error "must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Brown v. Ruane*, 630 F.3d 62, 67 (1st Cir. 2011) (quoting *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002)).

Even assuming the state court committed an error, habeas relief is only appropriate if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (internal citations omitted).  In other words, habeas relief cannot be granted for "harmless" errors, which are defined as those errors that did not impact the verdict.

## IV.   DISCUSSION

As noted above, Payne argues that the jury should not have been allowed to consider the charge of murder because there was evidence that he shot and killed DelValle after being provoked and in the course of sudden combat, and therefore at most committed manslaughter.  Although the court is comfortable that this is in fact the argument the petitioner is making, it bears noting that Payne's various pleadings have led some to presume that he means to argue, or at least means to *also* argue, that the evidence at trial was insufficient to support the jury's verdict of second degree murder.  That is partially how the Appeals Court in *Payne II* interpreted his argument, and the respondent similarly reads the petition here as raising a sufficiency argument.  In response, Payne appears through his reply brief to explicitly reject the notion that he is challenging the sufficiency of the evidence.  He appears instead to clarify and affirm that his principal argument is a single and legal one, namely that he was entitled as a matter of law under SJC precedent to have the murder charge removed from the jury's consideration because he presented evidence that he shot DelValle under circumstances amounting at most to manslaughter:

> Payne is not arguing that the jury should have accepted his version of the events, rather Payne argues that he is constitutionally actually innocent of murder, and the jury was free to consider manslaughter.  Payne is not

14

> arguing the weight of the evidence, Payne is complying
> with the Supreme Judicial Court's holding in more than
> eight cases, that where there is sudden combat, there is
> no murder.    There is only the possibility of
> manslaughter.  The self defense argument is one that the
> jury considered and rejected.  But, the murder as opposed
> to manslaughter was a matter that the jury should not
> have had in front of it to consider.   It should have
> only been manslaughter.

(Petitioner's Reply Mem. at p. 7).  Payne argues that because he

was deprived of receiving a reduction that demonstrably from the

SJC precedent has been provided to others, his constitutional due

process and equal protection rights have also been violated as

established by the Supreme Court in *Jackson v. Virginia*, 443 U.S.

307 (1979).  Payne is not entitled to habeas relief on this claim,

for two reasons.

First, Payne's claim is not cognizable on habeas review

because he alleges only an error of state law.  Specifically, Payne

alleges that the trial court erroneously ignored well-established

SJC precedent when it declined in *Payne* II to reduce his verdict

under Mass. R. Crim. P. 25(b)(2), and/or when it declined in *Payne*

III to reduce the verdict or give him a new trial under Mass. R.

Crim. P. 30(b).  As such, he alleges that the trial court

incorrectly applied state law in determining whether he met the

standard for relief under a state rule of criminal procedure.  Such

a claim is not cognizable on federal review because "federal habeas

corpus relief does not lie for errors of state law."  *Swarthout v.*

*Cooke,* 562 U.S. 216, 219 (2011) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67 (1991)).  Rather, a federal court may "entertain an application for a writ of habeas corpus. . .only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Here, even assuming *arguendo* that the trial court erred in some fashion, it did not implicate Payne's federal constitutional rights and habeas relief therefore is not available to remedy it. *See Stevenson v. Dickhaut*, No. 13-cv-11337-IT, 2015 WL 2129717, *14 (D. Mass. March 16, 2015) (petitioner not entitled to habeas review on whether he met standard under Rule 25(b)(2) for reduced verdict); *William v. Roden*, No. 09-10237-JLT, 2010 WL 2428822 (D. Mass., June 9, 2010) (same); *see also Sawyer v. Smith*, 497 U.S. 227, 239, (1990) ("availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution").

To be sure, Payne argues that the failure to reduce his conviction from murder to manslaughter constitutes a violation of his constitutional rights as articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  His reliance on *Jackson* is misplaced here, however.  *Jackson* stands for the proposition that there must be sufficient evidence at trial to find guilt beyond a reasonable doubt on a charge.  *Jackson,* 443 U.S. 307.  As noted above, Payne

states plainly that he is not advancing a sufficiency argument here.[2]

Moreover, even assuming the merits of the petitioner's claim were reached, he would not be entitled to habeas relief, for two related reasons.  First, relief is unavailable because there is no clearly established Supreme Court precedent entitling a defendant to have a murder charge reduced to manslaughter simply because there may be evidence which would if accepted support a finding of manslaughter.  On the contrary, the Supreme Court has held consistently, for well over one hundred years, that what a defendant *is* entitled to in such a scenario is a *jury instruction*

---

[2] On the off chance the petitioner is now heard to counter that he does in fact challenge the sufficiency of the evidence on second degree murder, the claim is unavailing.  In evaluating whether the evidence is sufficient to support a conviction, the court on habeas review must determine whether "after viewing evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.  Massachusetts state courts apply an insufficiency of evidence standard substantially identical to the standard promulgated by the Supreme Court in *Jackson*.  *See Linton v. Saba*, 812 F.3d 112, 120 (1st Cir. 2016) ("[T]he evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." (quoting *Commonwealth v. Linton*, 456 Mass. 534, 544 (2010))).  Applying that standard, a rational jury could have found beyond a reasonable doubt that Payne acted with malice when he traveled to Vaughn's location with an armed firearm and intentionally shot DelValle three times.  Indeed, and as the Appeals Court noted, the issue at trial was not whether the evidence was sufficient to support a conviction for second degree murder, but whether the jury credited the petitioner's assertion that he acted in self-defense.  "Credibility determinations, and inferences drawn from the evidence are the grist of a jury's deliberative process and the defendant fail[ed] to identify why the evidence, viewed most favorably to the commonwealth, would not have supported a verdict of second degree murder."  S.A. 123.  Payne has not provided the court with a basis to question the Appeals Court's assessment of the sufficiency of the evidence.

on the lesser included offense, not a reduced verdict.  *See Keeble v. United States,* 412 U.S. 205, 208 (1973) (where evidence would permit a jury rationally to find defendant guilty of lesser offense and acquit him of greater offense, he is entitled to an instruction); *Sansone v. United States,* 380 U.S. 343, 349 (1965); *Berra v. United States,* 351 U.S. 131, 134 (1956); *Stevenson v. United States,* 162 U.S. 313 (1896) (defendant charged with murder entitled to jury instruction on manslaughter where evidence justified it being given).  Thus, Payne's claim fails.  *See Carey v. Musladin,* 549 U.S. 70, 77 (2006) (habeas relief not available where there is no Supreme Court holding to support petitioner's claim).

Second, it is equally evident from this long-established Supreme Court precedent that the trial court's treatment of Payne's claim was entirely consistent with and not contrary to federal law, to wit:  the trial judge properly instructed the jury that it could return a verdict of manslaughter in lieu of murder if it found that Payne was provoked by DelValle and shot him in the course of sudden combat.  In that regard, it bears stressing that Payne is simply incorrect when he asserts that SJC precedent compels a court to remove murder from a jury's consideration if there is also evidence that would support a finding of manslaughter.  The SJC has never pronounced such a holding and

none of the precedent cited by Payne lends any support for the
proposition.  Rather, the SJC has held, consistent with federal
law, that where such evidence is present a defendant charged with
murder is entitled to a *jury instruction* on manslaughter.  *See*
*Commonwealth v. Glover*, 459 Mass. 836, 841 (2011) (jury instruction
on reasonable provocation warranted if there is evidence of
provocation); *Commonwealth v. Dyer*, 460 Mass. 728, 748 (2011) (no
entitlement to voluntary manslaughter instruction based on
provocation where defendant denied intentional killing);
*Commonwealth v. Acevedo*, 446 Mass. 435, 443 (2006) (jury
instruction on reasonable provocation is warranted where there is
evidence of provocation deemed adequate in law to cause accused to
lose self-control in the heat of passion); *Commonwealth v. Andrade*,
422 Mass. 236, 237-38 (1996) (noting that verdict of voluntary
manslaughter in "heat of passion case" is warranted if there is
evidence of adequate provocation and killing occurred before
sufficient time for accused to cool off, but these are questions
for the jury); *Commonwealth v. Carrion*, 407 Mass. 263, 266-67
(1990) (defendant entitled to jury instruction on voluntary
manslaughter if there is evidence that would support finding of
manslaughter); *Commonwealth v. Walden*, 380 Mass. 724, 726 (1980)
(manslaughter charge should be given if any view would support it

19

over murder); *Commonwealth v. Rodriguez*, 370 Mass. 684 (1976) (affirming right to jury instruction where evidence warrants).

In short, the petitioner's claim is not cognizable because it asserts only an error of state law.  Even assuming the merits were reached, relief would not be available because the trial court's treatment of the petitioner's Rule 25(b)(2) motion was not contrary to established federal law and in fact fully comported with federal (and state) law.[3]

**V.    CONCLUSION**

For the foregoing reasons, I respectfully recommend that the petitioner's habeas corpus petition be DENIED.

The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt

---

[3] The respondent also argues that, assuming the petition raises a cognizable federal claim, the claim cannot be considered on habeas review because the Appeals Court's finding in *Payne* III --that Payne was barred from challenging the trial court's denial of his Rule 25(b)(2) motion by the doctrine of direct estoppel, constitutes an independent and adequate law ground precluding further review.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (a federal court will not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.").  This court does not agree with that position, however.  The Supreme Court has held that when a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, "it creates no bar to federal habeas review." *Cone v. Bell,* 556 U.S. 449, 466 (2009).  Rather, a "claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration -not when the claim has been presented more than once." *Id*. at 467.

of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See *Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *See also Thomas v. Arn*, 474 U.S. 140 (1985).


/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.


DATED:  February 6, 2018

21